## FREEMAN v. SMITH.
### No. 6923.

Circuit Court of Appeals, Ninth Circuit.
Dec. 12, 1932.

H. L. Faulkner, of Juneau, Alaska, and Lund & Lund, of Seattle, Wash., for appellant.

John Rustgard, Atty. Gen., of Alaska, for appellee.

Pillsbury, Madison & Sutro, F. D. Madison and L. B. Groezinger, all of San Francisco, Cal., amici curiæ.

Before WILBUR and SAWTELLE, Circuit Judges, and CAVANAH, District Judge.

WILBUR, Circuit Judge.

This is a second appeal in this case. The former one was from a decree of dismissal after the court had sustained a demurrer to the bill of complaint based upon the ground that the facts alleged did not state a cause of action. Freeman v. Smith, 44 F.(2d) 703, 704. After the case had been remanded to the lower court, the defendant, Smith, treasurer of the territory of Alaska, filed an answer denying the allegation of the bill that the average catch of salmon for each year by members of the trolling fleet did not exceed $500 and alleging "that trollers who, during the entire season trolled for salmon in the territorial waters of Alaska, caught during each such seasons an average of more than $3,000 worth of salmon in such waters over and above expenses of operation," and alleging "that an experienced troller devoting his time to trolling for salmon within the

territorial waters of Alaska, will each season earn not less than $3,000 over and above expenses of operation." Evidence was adduced upon this issue and the trial court rendered a decree denying the plaintiff any relief. It appears from the opinion of the trial court, which is incorporated in the transcript, that the court based its conclusion upon the inability of the plaintiff to prove the average annual earnings of those fishermen who trolled in Alaskan waters. Eight or ten fishermen testified that their average net earnings as salmon trollers had been approximately $500 per annum, or less. The appellee introduced evidence that certain fishermen had made more than $500 per annum; one of the defendant's witnesses testified "that approximately he made something like around $1,000 a year above expenses; that the average for the trolling fleet would be below this average."

It is argued by the appellee that the decision of this court upon the former appeal is no longer controlling in that there was a failure to prove the above mentioned allegation of the bill which had been admitted on the former appeal. The appellee, therefore, reargues the questions which were argued and submitted on the previous hearing. The basic question presented on the former appeal was the effect of the Act of Congress adopted June 6, 1924 (43 Stat. 464 [48 USCA § 221 et seq.]) upon the power of a territorial Legislature by its act of 1929 (Session Laws of Alaska, 1929, c. 96, p. 192), to impose a fishing license tax of $250 upon all persons resident or nonresident who had not resided in the territory of Alaska for one year previous to their application for the license to troll for fish, while at the same time imposing a tax of only $1 for the same fishing privilege upon residents of Alaska who had so resided in the territory for a year or more. Upon this question we held that the Act of Congress of June 6, 1924, above referred to (43 Stat. 464), granted or reserved the right to all citizens of the United States to fish within areas where such fishing was not prohibited by regulation adopted by the Secretary of Commerce. This decision was based upon the proviso contained in section 1 of the act (48 USCA § 222) which is as follows: "Provided, That every such regulation made by the Secretary of Commerce shall be of general application within the particular area to which it applies, and that no exclusive or several right of fishery shall be granted therein, nor shall any citizen of the United States be denied the right to take, prepare, cure, or preserve fish or shellfish in any area of the waters of Alaska where fishing is permitted by the Secretary of Commerce."

We quote from our opinion, written by Judge Rudkin on the former appeal, as follows: "It will thus be seen that the right to take, prepare, cure, or preserve fish or shellfish in any area of the waters of Alaska, where fishing is permitted by the Secretary of Commerce, is guaranteed to every citizen of the United States without reservation, whether he be a resident of Alaska or not; and the right so granted cannot be impaired or destroyed by the legislative assembly of the territory. If it can, the grant is an idle and empty one at best. Nor is the right thus conferred in anywise impaired by the last section of the act, which provides in general terms that nothing therein contained shall abrogate or curtail the powers granted the territorial Legislature to impose taxes or licenses nor limit or curtail any powers granted the territorial Legislature by the Organic Act."

Further, from our opinion: "The naked power to impose taxes and licenses, or to make reasonable discrimination between residents and nonresidents, is not involved."

Appellee on this appeal attacks the conclusion reached on the former appeal and argues that as the territorial Legislature had power to impose the taxes, fix license fees, the question of whether or not such fees are reasonable cannot be considered by a court. This contention is based upon section 8 of the Act of June 6, 1924 (48 USCA § 228), which expressly provides that nothing contained in the act should deprive the Alaskan Legislature of power to levy taxes and license fees and that nothing in the act contained should restrict the legislative power conferred on it by the Organic Act of 1912. The Organic Act of 1912 (section 3, 37 Stat. 512 [48 USCA § 24]), as we have seen, prohibited the territorial Legislature from later altering, amending, or modifying or repealing laws relating to game and fishing in Alaska. Auk Bay Salmon Canning Co. v. U. S. (C. C. A.) 300 F. 907. This power was reserved to Congress. The exercise of that right by Congress in subsequent legislation could not have the effect of altering or modifying the Organic Act for the reason that by the terms of the Organic Act itself this power was reserved to Congress. The exercise of that right by Congress of course would not change or modify the powers of the territorial Legislature which was denied that right by the Organic Act. Nor would the fact that the Congress granted the right to all citizens of

the United States to fish in the territorial waters of Alaska where fishing was allowed by regulations of the Secretary of Commerce alter or amend the right of the territorial Legislature to levy taxes or license fees. That power when exercised by the territorial Legislature was necessarily by the Organic Act itself so limited that it could not be used to nullify an act of Congress granting fishing rights. Consequently it makes no difference whether the right of a citizen of the United States to fish in Alaskan waters was granted before or after the Organic Act. In either event the right of taxation granted to the territorial Legislature could not be so unreasonably exercised as to deprive a citizen of the United States of a right granted by Congress. Although such rights were subject to reasonable taxation the power of taxation could not be used to deprive a citizen of a right granted by Congress nor to unreasonably restrict that right. This much we held, in effect, on the former appeal where section 8, supra, was construed. In that regard we are not only bound by our previous decision which has become the law of the case [Roberts v. Cooper, 20 How. (61 U. S.) 467, 15 L. Ed. 969; Montana Mining Co. v. St. Louis Mining Co. (C. C. A. 9), 147 F. 897, 903; United States v. Axman (C. C. A. 9) 193 F. 644, 649; Bodkin v. Edwards (C. C. A. 9) 265 F. 621], but we reaffirm that conclusion.

The question then arises, Is the license tax in question an unreasonable tax? On the previous appeal we concluded that the exaction of 50 per cent. of the net receipts of the average troller as a license fee was unreasonable and violative of the right granted by Congress to fish in Alaskan waters. We go a step further on the present appeal and hold that the imposition of a license fee of $250 upon all fishermen who fish by trolling in Alaskan waters, regardless of whether they fish for one hour or one year, and regardless of the catch, is an infringement of the right to fish granted by Congress (43 Stat. 464, supra) notwithstanding the fact, if it be a fact, as alleged in the answer, that skillful fishermen who devote their entire time to fishing during the entire fishing season, can catch fish to the value of $3,000.

In our opinion on the previous appeal, we stated that the right of the territorial Legislature to make reasonable discrimination between residents and nonresidents, was not involved in our conclusion therein which was based upon the unreasonableness of the license fee. The question of the right of the territorial Legislature to discriminate between citizens of the United States who are residents

and those who are nonresidents of Alaska, where Congress has expressly granted a right to all citizens of the United States to fish in Alaskan waters unless prohibited by regulations of the Secretary of Commerce, is involved in the case, but in view of our conclusion that the license tax is an unreasonable abridgement of the right of a citizen of the United States, it is unnecessary to consider the discriminatory provisions except as they tend to illustrate the unreasonableness of requiring so large an amount to be paid by nonresidents for exercising the same right afforded to residents by the payment of only one 1/250th of that amount. The decision of the Supreme Court (Haavik v. Alaska Packers' Ass'n, 263 U. S. 510, 44 S. Ct. 177, 68 L. Ed. 414) holding that the territorial Legislature could discriminate between residents and nonresidents in fixing license fees, was rendered before the enactment of the act of Congress now under consideration granting rights to all citizens to fish in areas designated by the Secretary of Commerce for that purpose. It is, therefore, not decisive of the right of the territorial Legislature to so discriminate between citizens of the United States who are residents and those who are nonresidents of Alaska where both have been granted a right by act of Congress.

The decree is reversed and the trial court is directed to enter a decree permanently enjoining the defendant from enforcing the license fee of $250 fixed by the statute of Alaska in question.