**RUBERT HERMANOS, Inc., v. PEOPLE OF PUERTO RICO.**

No. 3417.

Circuit Court of Appeals, First Circuit.

Sept. 27, 1939.

755

PETERS, District Judge, dissenting.

Henri Brown, of San Juan, P. R. (Jaime Sifre, Jr., of San Juan, P. R., on the brief), for appellant.

William Cattron Rigby, of Washington, D. C., and Miguel Guerra-Mondragon, of San Juan, P. R. (B. Fernandez Garcia, Atty. Gen. P. R., Rafael Rivera Zayas and Paul Defendini, both of San Juan, P. R., and Nathan R. Margold, of Washington, D. C., on the brief), for the People of Puerto Rico.

Before WILSON, Circuit Judge, and PETERS and MAHONEY, District Judges.

WILSON, Circuit Judge.

This is an appeal from a judgment of the Supreme Court of Puerto Rico in a complaint or information in the nature of a quo warranto proceeding against the appellant, Rubert Hermanos, Inc., brought in 1936 by the People of Puerto Rico through its Attorney General, in which the petitioners seek to declare a forfeiture of the franchise of the appellant corporation and dissolve it, and to impose a statutory fine.

The reasons for the forfeiture assigned in the complaint are a violation of Sec. 3 of the Joint Resolution No. 23 of Congress approved May 1, 1900, 31 Stat. 716, 48 U.S. C.A. § 752; and of Section 39 of the Organic Law of Puerto Rico enacted March 2, 1917, known as the Jones Act, 48 U.S.C. A. § 752; and a violation of the appellant's Articles of Association, together with an allegation that the defendant has violated the public policy of the Island of Puerto Rico as established by the acts above referred to and by Act No. 33 and Act No. 47 of the Puerto Rican legislature both enacted in 1935, all of which expressly limit the holding of land by a corporation organized under the corporation laws of Puerto Rico and engaged in agriculture to not exceeding 500 acres.

A motion to strike portions of the original complaint was allowed, but a motion to strike certain statements in the amended complaint was disallowed; and a demurrer to the amended information was filed by the respondent and overruled. The respondent then filed an answer in which was admitted certain of the allegations of the complaint, viz.: that it is a corporation organized under the laws of Puerto Rico; that it is engaged in the cultivation of sugar cane and the manufacture of sugar on the Island; that it owns over 12,000 acres of land devoted to that business; but it denies that the ownership of so large an acreage of land in Puerto Rico is contrary to the public policy of the Island as established by the Acts of Congress and the statutes of the Puerto Rican legislature above referred to; or that it conflicts with the economic welfare of the People of the Island; that the People of Puerto Rico have recognized this large ownership by the appellant by collecting taxes thereon with full knowledge of its extent ever since the organization of the corporation in 1927; and not until the year 1935 has any question been raised as to the illegality of the corporation's real estate holdings, but it denies jurisdiction of the Supreme Court of Puerto Rico under Acts of the Puerto Rican legislature hereinafter referred to, since it contends that Acts No. 33 and No. 47 enacted by the Puerto Rican legislature in 1935 vesting jurisdiction of these proceedings in the Supreme Court of Puerto Rico are each null and void.

At the close of the plaintiff's case the respondent corporation offered no evidence in support of the allegations of its answer, but moved to dismiss the information substantially on the same grounds on which its demurrer and answer were based.

The insular Supreme Court on the overruling of the defendant's demurrer and denial of its motion to dismiss, entered

756

judgment in favor of the People of Puerto Rico, with the following pronouncements or reasons for its judgment:

" * * * that the defendant corporation Rubert Hermanos, Inc., is engaged in agriculture and is guilty of owning and controlling 12,188 acres of land in violation of the provisions of Joint Resolution No. 23 of the Congress of the United States (31 Statutes at large 716, U.S.C.A., Title 48, sec. 752), of Section 39 of the Organic Law of Puerto Rico and of its own articles of incorporation, by all of which provisions the said defendant corporation is expressly limited and restricted to the ownership and control of lands not in excess of 500 acres."

▓▓▓ ·The insular Supreme Court is a statutory court. Its jurisdiction in a complaint that acts of a corporation are merely contrary to the public policy of the Island is not a sufficient allegation alone to warrant a forfeiture of the franchise of a corporation. If made a ground of jurisdiction of the insular Supreme Court in quo warranto proceedings, the complaint must be based specifically on the statutes which declare the public policy.

The Acts of Congress and of the Puerto Rican legislature applicable to these proceedings are as follows:

Sec. 3 of the Joint Resolution of Congress, No. 23, approved May 1, 1900, 48 U.S.C.A. § 752, provided that:

"No corporation shall be authorized to conduct the business of buying and selling real estate or be permitted to hold or own real estate except such as may be reasonably necessary to enable it to carry out the purposes for which it was created, and every corporation hereafter authorized to engage in agriculture shall by its charter be restricted to the ownership and control of not to exceed five hundred acres of land."

Sections 34 and 39 of the Organic Act of 1917 provide:

"Sec. 34. That * * * all laws enacted by the Legislature of Porto Rico shall be reported to the Congress of the United States, as provided in section twenty-three [842] of this Act [title], which hereby reserves the power and authority to annul the same. * * *"

"No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void

only as to so much thereof as shall not be so expressed."

"No law shall be revived, or amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended, or conferred shall be reenacted and published at length." 48 U.S.C.A. §§ 826, 832, 835.

"Sec. 39. [2d par.] That nothing in this Act contained shall be so construed as to abrogate or in any manner impair or affect the provision contained in section three of the joint resolution approved May first, nineteen hundred, with respect to the buying, selling, or holding of real estate. That the Governor of Porto Rico shall cause to have made and submitted to Congress at the session beginning the first Monday in December, nineteen hundred and seventeen, a report of all the real estate used for the purposes of agriculture and held either directly or indirectly by corporations, partnerships, or individuals in holdings in excess of five hundred acres." 39 Stat. 964, 48 U.S.C.A. § 752 note.

Act No. 30 of March 9, 1911, Sec. 3, Par. 4, referring to the powers of corporations organized under this Act provided:

" * * * That the power of any agricultural corporation (The Act of 1902 reads 'any corporation', omitting the word 'agricultural', Rev.Stats. & Codes of 1902, supra, Civil Code, Sec. 32–(4), p. 759) organized under this act to hold real estate shall be subject to the prohibition contained in section three of the joint resolution of the Congress of the United States, of May first, nineteen hundred."

Prior to 1935 exclusive jurisdiction of quo warranto proceedings was vested in the insular District Courts of Puerto Rico. It was not until the passage of Act No. 33 of July 22, 1935 (Laws of Puerto Rico, Special Session, 1935, p. 418), and Act No. 47 of August 7, 1935 (Laws of Puerto Rico, Special Session, 1935, p. 539), that the legislature of Puerto Rico enacted several statutes, the common purpose of which was to provide the necessary remedial measures for curbing existing land monopolies and preventing further violations of the provisions of Sec. 3 of the Joint Resolution No. 23 of Congress and Sec. 39 of the Organic Act approved March 2, 1917.

Act No. 33 of the Puerto Rican legislature approved July 22, 1935, conferred on the Supreme Court of Puerto Rico exclusive original jurisdiction to take cognizance

of all quo warranto proceedings for violations of the provisions of Section 752, Title 48, U.S.C.A., and was entitled: "An Act To Confer Upon The Supreme Court Of Puerto Rico Exclusive Original Jurisdiction In Quo Warranto Proceedings That The Government Of Puerto Rico May Institute For Violations Of The Provisions Of Section 752, Title 48, United States Code [48 U.S.C.A. § 752], And For Other Purposes", and provides:

"Section 1. There is hereby conferred upon the Supreme Court of Puerto Rico exclusive original jurisdiction to take cognizance of all Quo Warranto proceedings that the Government of Puerto Rico may hereafter institute for violations of the provisions of Section 752, Title 28, United States Code, and for that purpose it is provided that the violation of said provisions shall constitute sufficient cause to institute a proceeding of the nature of Quo Warranto."

This Act is clearly null and void, see Gallardo et al. v. Porto Rico Railway, Light & Power Co., 1 Cir., 18 F.2d 918; People of Puerto Rico v. Torres, 28 P.R.R. 783.

Act No. 47 of the Puerto Rican legislature approved August 7, 1935, provides:

"Section 1. Section 2 of an Act (of the Puerto Rican legislature) entitled 'An Act establishing Quo Warranto proceedings', approved March 1, 1902, is hereby amended as follows:

" 'Section 2. In case any person should usurp, or unlawfully hold or execute any public office * * * or any corporation does or omits any act which amounts to a surrender or forfeiture of its rights and privileges as a corporation, or exercises rights not conferred by law, the Attorney General, or any prosecuting attorney of the respective district court, either on his own initiative or at the instance of another person, may file before any district court of Puerto Rico a petition for (leave to file) an information in the nature of Quo Warranto in the name of The People of Puerto Rico; or whenever any corporation, by itself or through any other subsidiary or affiliated entity or agent, exercises rights, performs acts, or makes contracts in violation of the express provisions of the Organic Act of Puerto Rico or of any of its statutes, the Attorney General or any district attorney, either on his own initiative or at the instance of another person, may file before the Supreme Court of Puerto Rico a petition for (leave to file) an information in the nature of Quo Warranto in the name of The People of Puerto Rico; and if from the allegations such court shall be satisfied that there is probable ground for the proceeding, the court may grant the petition and order the information accordingly. * * * *' "

Section 6 of the Act of March 1, 1902, by Act No. 47 is also amended as follows:

"Section 6. In case any person or corporation against whom any such petition is filed, is adjudged guilty, the court may give judgment of ouster against such person or corporation from the office or franchise to which the petition refers, and fine such person or corporation for usurping, intruding in, or unlawfully holding and executing such office or franchise, and also give judgment in favor of the defendant for the costs of the prosecutions; * * *

"Whenever, in the opinion of the court, it is satisfactorily established that the corporation or corporations have performed acts or exercised rights not conferred by law, or in violation of the express provisions thereof, the judgment entered shall, in case the defendant is a domestic corporation, decree the dissolution thereof and the prohibition to continue doing business in the country; * * * and when the decree of nullity affects real property and The People of Puerto Rico has chosen to confiscate it or orders it sold at public auction, the final judgment shall fix the reasonable price to be paid for said property. For these purposes, the just value of the property subject to alienation or confiscation shall be fixed in the same manner as it is fixed in case of condemnation proceedings."

No questions of fact are involved in this appeal. The ground on which the appellant bases its prayer that the judgment of the Supreme Court appealed from be reversed and set aside is that the Supreme Court of Puerto Rico is without jurisdiction to entertain this proceeding; or that the allegations of a violation of a statute are not sufficiently specific to warrant a dissolution of a corporation and a forfeiture of valuable property.

Summarily stated, the appellant's contention is (1) that no jurisdiction is vested in the insular Supreme Court of quo warranto proceedings against this corporation on the ground that its powers are ultra vires of its Articles of Incorporation; and (2) that Act 33 of July 22, 1935, and Act 47 of August 7, 1935, by which jurisdiction is purported to be conferred on the Su-

preme Court of Puerto Rico founded on violation of 48 U.S.C.A. § 752, which is Sec. 3 of the Joint Resolution of Congress enacted May 1, 1900, and carried into the Organic Act of Puerto Rico by Section 39 thereof, are each null and void, because the legislature had no power to enact them; and because both Acts violate Section 34 of the Organic Act as to the subject and title of bills and amendment of laws when enacted by the Puerto Rican legislature; or if either statute is valid the complaint does not set forth with sufficient particularity a violation thereof to warrant the forfeiture of the charter and property of this corporation.

The appellee contends that the provisions of the Joint Resolution No. 23 of the Congress of May 1, 1900, restricting corporations engaged in agriculture in Puerto Rico to the ownership and control of not to exceed 500 acres of land, emphasized and in effect reenacted by section 39 of the present Organic Act of March 2, 1917, was an effective expression of the public policy of the United States with reference to the ownership and control of agricultural lands in Puerto Rico; and that the acts of the insular legislature conferring jurisdiction on the insular Supreme Court in quo warranto cases based upon violation of such Acts of Congress, are valid enactments of the legislature of Puerto Rico; that the insular Supreme Court therefore had jurisdiction of this proceeding; that the titles of each of the Acts, Nos. 33 and 47 (Special Session of 1935), sufficiently state the purpose of the Act within the meaning of Section 34 of the Organic Act, since each of these Acts has but a single purpose, within the meaning of that section of the Organic Act; and neither of them offends against the provisions of that section with relation to amending prior insular statutes.

■ It is obvious, we think, that the local Puerto Rican legislature under its grant of legislative powers contained in the Organic Act cannot itself amend an Act of Congress, or the Organic Act. The broad statement to that effect in Puerto Rico v. The Fajardo Sugar Co. of Porto Rico et al., 50 D.P.R. 163, and 51 D.P.R. 876, was clearly erroneous. The point requires no consideration; nor do we think the Puerto Rican legislature can by implication or direct enactment confer on the Supreme Court of Puerto Rico jurisdiction of offenses in violation of Acts of Congress, or amend an Act of Congress by imposing a penalty where none existed before. Auk Bay Salmon Canning Co. v. United States, 9 Cir., 300 F. 907; People of Puerto Rico v. Torres, 28 P.R.R. 783. It may well be that the Puerto Rican legislature can vest jurisdiction of offenses in violation of its own statutes and can legislate as to matters in the same field as Congress is occupying, provided its legislation does not conflict with Congressional mandates. This point, however, as we view it, is not involved in this case.

The court said in the case of People of Puerto Rico v. Shell Co., 302 U.S. 253, 263, 58 S.Ct. 167, 172, 82 L.Ed. 235:

"In the light of the foregoing considerations, including the sweeping character of the congressional grant of power contained in the Foraker Act and the Organic Act of 1917, the general purpose of Congress to confer power upon the government of Puerto Rico to legislate in respect of all local matters is made manifest. In this connection it is significant that the only express limitation upon the power is that, in certain of its aspects, it shall be exercised consistently with the provisions of the respective acts. See sections 37, 57 of the Organic Act [known as the Jones Act] (48 U.S.C.A. §§ 735, 736, 774, 821), and section 32 of the Foraker Act."

The Joint Resolution No. 23 of Congress is, of course, a federal law. People of Puerto Rico v. The Fajardo Sugar Co. et al., 50 D.P.R. 163 (not yet published in the English type) in which the Supreme Court of Puerto Rico stated:

"It is a statute of purely constitutional character; an amendment to our Organic Act having no other function or scope than to limit the power delegated to our Legislature to create and regulate the juridical persons engaged in agriculture."

■ These Acts, No. 33 and No. 47, amend and enlarge the scope of a law of the United States, viz.: the Joint Resolution of Congress of May 1, 1900, which forms a part of the present Organic Act of Puerto Rico, which is likewise a federal law, by attaching a penalty for its violation, i. e., the forfeiture of its corporate franchise, and conferring jurisdiction upon an insular court to impose and enforce such penalty through the instrumentality of a proceeding in the nature of quo warranto. It thus at the same time legislates upon a matter within the exclusive jurisdiction of the Congress of the United States and purports

to vest jurisdiction in an insular court of a matter as to which exclusive jurisdiction is reserved to courts of the United States by its laws. 28 U.S.C.A. § 371. It converts a federal statute, enacted for the only purpose of imposing limitations upon the legislative powers of the legislature of Puerto Rico into a penal statute, and in so doing disregards the limitation upon its legislative powers prescribed in the Organic Act of Puerto Rico.

The appellant does not deny the power of the legislature of Puerto Rico, to confer jurisdiction upon the Supreme Court of Puerto Rico, or other insular courts, of quo warranto proceedings. Its contention, however, is that the power of the Puerto Rican legislature to confer original jurisdiction on the Supreme Court of Puerto Rico in such cases is limited to matters falling within its legislative ambit. This statute purports to vest jurisdiction in the Supreme Court of Puerto Rico upon a ground over which it has no legislative control, viz.: to amend a federal statute by attaching a penalty and give jurisdiction to an insular court of violations of federal offenses.

That the Joint Resolution which forms a part of the Organic Act of Puerto Rico is a federal statute is unquestioned. In the decision in People of Puerto Rico v. The Fajardo Sugar Co. et al., 50 D.P.R. 163, June 4, 1936, the Supreme Court of Puerto Rico recognizes that fact, stating:

"It is a statute of a purely constitutional character; an amendment to our Organic Act having no other function or scope than to limit the power delegated to our Legislature to create and regulate the juridical persons engaged in agriculture."

This court has repeatedly held that the Organic Act is a federal law—Gerardino et al. v. People of Porto Rico, 1 Cir., 29 F. 2d 517; Municipality of Rio Piedras v. Serra, Garabis & Co., Inc., 1 Cir., 65 F.2d 691, 698.

It is unimportant that the title of an Act does not declare an intention to amend a federal statute. Its character as an amendment must be determined by its effect rather than by its declaration of intention.

"Whether an act is amendatory of a prior act is to be determined by a comparison of their provisions, and its character is not determined by the fact that it does or does not profess to be an amendment. The form which the latter act may take is not material, and although it purports to be complete in itself, if it intermingles different provisions with the old ones or adds new provisions creating a new law from the prior act, then the new one is amendatory." 59 Corpus Juris, p. 851; In re Lovett, D.C., 2 F.2d 307.

Similar legislation by the Territory of Alaska was declared invalid as an amendment of an act of Congress in Auk Bay Salmon Canning Co. v. United States, supra, in which the court said [300 F. 910]:

"We see no escape from the conclusion that to make the changes in those laws which were attempted to be made by the territorial Legislature was to alter, amend, and to some extent repeal the acts of Congress relating to the same subject, and was within the prohibition of the Organic Act. To extend the period of the closed season, to enlarge the area affected by it, and to increase the penalties for violation of the fishing regulations, was to amend and alter the existing law. This conclusion is not obviated by the declaration therein contained that the statute shall not be construed as in any wise to alter, amend, modify, or repeal any of the fish laws, and that its purpose is only to provide for further and additional regulations for additional protection to the salmon and insure a future supply thereof, and it is not ground for holding otherwise that the alterations and amendments did in fact result only in greater protection to the fish and were in the interests of and operated to the welfare of the inhabitants of Alaska."

This court held in Gallardo et al. v. Porto Rico Railway, Light & Power Co., 1 Cir., 18 F.2d 918, that Section 290 of the Political Code enacted by the legislature of Puerto Rico, could neither extend nor limit the application of Section 2 of the Organic Act of Puerto Rico, 48 U.S.C. A. § 737.

In the Territory of Nebraska v. Lockwood, 3 Wall. 236, 18 L.Ed. 47, the court held that the territorial legislature could not authorize quo warranto proceedings to investigate the right of a judge of the Supreme Court of the territory to exercise his office which had been created by the Organic Act of the territory. See People of Puerto Rico v. Torres, 28 P.R.R. 783.

Nor can any tenable contention be based upon the legislative powers conferred on the legislature of Puerto Rico by the Organic Act of Puerto Rico.

Section 37 of the Organic Act, 48 U.S.C.A. § 821, reads:

"That the legislative authority herein provided shall extend to all matters of a ·legislative character not locally inapplicable, including power to create, consolidate, and reorganize the municipalities so far as may be necessary, and to provide and repeal laws and ordinances therefor; also the power to alter, amend, modify, or repeal any or all laws and ordinances of every character in force in Porto Rico or municipality or district thereof [on March 2, 1917] in so far as such alteration, amendment, modification, or repeal may be consistent with the provisions of this Act [chapter]."

█ It is well settled that the legislature of a state or territory cannot assume jurisdiction of the trial and prosecution of an offense against an Act of Congress, or of an action to recover a penalty for the violation of a penal law enacted by Congress. People of Puerto Rico v. Torres, supra.

It is not questioned that Puerto Rico can legislate with regard to corporations of its own creation, just as it may legislate as to other entities and individuals within its jurisdiction. The Supreme Court in this case failed to distinguish between local statutes controlling corporations and amendments attaching penalties to violations of federal laws.

But this Act goes much further than the territorial acts declared invalid in the cases above cited. It changes or attempts to change the very nature of the law that it amends and operates upon. By Act No. 33 the legislature of Puerto Rico changes the Joint Resolution No. 23 from an Act addressed to the legislature into an Act directed to corporations. The limitation of the Joint Resolution of Congress is on the powers of the legislature. Act No. 33 converts it into a limitation on the powers of corporations.

The statute attempts to confer jurisdiction to impose penalties for violations of federal laws upon insular courts, and in so doing not only legislates upon a matter not within its legislative domain, but violates the express provisions of federal laws.

Title 28, Section 371, U.S.C.A., provides that:

"The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive * * *

"Second. Of all suits for penalties and forfeitures incurred under the laws of the United States."

The penalty here is created by an Act of Puerto Rico, but the law to which it attaches is a law of the United States. If the federal law disappeared, there would be nothing upon which this statute could operate.

In Puerto Rico v. Shell Co., 302 U.S. 253, 271, 58 S.Ct. 167, 175, 82 L.Ed. 235, the court said:

"Finally, it is contended that, if the local anti-trust act and the Sherman Act both stand, a conflict of jurisdiction between the federal courts and the local courts may result. But clearly there is slight, if any, ground for the apprehension. The local act simply confers jurisdiction upon the local courts to enforce that act. *No attempt, of course, is made to confer jurisdiction upon those courts to enforce the Sherman Act, or upon the federal courts to enforce the local act.* It is hard to see why a conflict as to which law shall be enforced and which jurisdiction shall be invoked should ever arise, since the officers charged with the administration and enforcement of both acts are, in the last analysis, under the control of the same sovereignty and, it well may be assumed, will work in harmony." (Italics supplied.)

It is further suggested that:

"While the Organic Act is a quasi Constitution for Porto Rico, it is, as defendants argue, also legislation by Congress, which has reserved complete power to annul the acts of the Porto Rican Legislature, and has not annulled the Water Power Act. This failure to annul has some, though not controlling, weight. But we are not prepared to adopt the appellants' broad contention that 'the Legislature of Porto Rico is an agent of Congress', and that therefore the 'act has now become in effect an act of Congress itself'. This proposition goes too far. Failure to annul is not the full equivalent of adoption. None of the cases cited and relied upon support the appellants' broad contention as to agency." Gallardo v. Porto Rico Railway, Light & Power Co., supra, 18 F.2d page 923. See Chuoco Tiaco v. Forbes, 228 U.S. 549, 557, 558, 33 S.Ct. 585, 57 L.Ed. 960; Porto Rico v. Am. etc. R. Co., 1 Cir., 254 F. 369, 377.

The appellant further contends that, since the complaint alleges that the basis of the proceedings set forth in this com-

plaint is founded on a violation of Section 752, Title 48, U.S.C.A., which is the Joint Resolution of Congress No. 23 of May 1, 1900, or on the public policy of the Island as established by the above statutes, the first issue raised before this court is whether the proceedings in the Supreme Court of Puerto Rico are based on a violation of a federal statute and not on a violation of a local act, which is contrary to the decision in the case of Puerto Rico v. Shell Co., supra, 302 U.S. page 307, 58 S.Ct. 167, 82 L.Ed. 235; Gallardo v. Porto Rico Railway, Light & Power Co., supra.

If the sole basis of the jurisdiction of the Supreme Court in these proceedings is the violation of the federal acts set forth above, the judgment of the Supreme Court can not be sustained for the reasons set forth in the preceding pages.

The only other basis for maintaining these proceedings and referred to in argument before this court is a provision in Act No. 47, supra, Sec. 2, which provides, that, if any corporation exercises rights not conferred by law, or performs acts or makes contracts in violation of the express provisions of the Organic Act of Puerto Rico or any of its statutes, the Attorney General or any district attorney may file a petition in the Supreme Court of Puerto Rico for an information in the nature of quo warranto.

Act No. 30, of Puerto Rico approved March 9, 1911, provided in Par. 4 of Sec. 3 that:

"4. To acquire and to hold in any legal manner and to transfer such property, both real and personal, as the purposes expressed in the articles of incorporation may require, and to mortgage such property with its franchises: Provided, however, That the power of any agricultural corporation (The Act of 1902 reads 'any corporation', omitting the word 'agricultural') organized under this act to hold real estate shall be subject to the prohibition contained in section three of the joint resolution of the Congress of the United States, of May first, nineteen hundred."

While the complaint contains an allegation as follows, it does not, we think, amount to an allegation that Act 30, Laws of 1911, or any other local law of Puerto Rico had been violated:

"(c) Subdivision (f) of section 4 of the aforesaid articles of incorporation provides, however, that the right of the afore- said corporation to hold and control land in the Island of Puerto Rico is restricted to 500 acres only, such restrictions being expressly described in conformity with the restrictions established in section 3 of the Joint Resolution of the Congress of the United States of America, approved May 1, 1900 (Joint Resolution No. 23, 56th Congress, First Session, 31 Statutes at Large 716, Code of the United States, Title 48, Section 752 [48 U.S.C.A. § 752]).

"(d) The aforesaid domestic corporation was thus authorized to engage in agriculture, was restricted by its articles of incorporation to own and control not more than 500 acres, and was warned by said articles of incorporation that the aforesaid restriction was imposed by law. Yet, notwithstanding the express prohibition contained in its articles of incorporation and besides in open violation of Joint Resolution No. 23 of the 56th Congress, First Session, approved May 1, 1900 (31 Statutes at Large 716, United States Code, Title 48, Section 752 [48 U.S.C.A. § 752]), said corporation owns and controls at present in full ownership and has owned and controlled for some time, several estates in excess of 500 acres, which it applies to the planting, cultivation and harvesting of sugar cane."

The judgment of the insular Supreme Court was based in part on these allegations; but the appellant contends that the insular Supreme Court had no jurisdiction in this case under Act No. 47, which confers jurisdiction on that tribunal only under certain conditions. The allegation in the information is that the articles of incorporation of the defendant include a prohibition against holding more than five hundred acres of agricultural land, but the articles of incorporation are not a statute of Puerto Rico, but merely set forth the purposes and limitations of a corporation organized under the laws of Puerto Rico.

There is no specific allegation that Act No. 30 of the Puerto Rican legislature enacted in 1911 has been violated. An allegation that a corporation had committed acts ultra vires of its articles of incorporation is not made a ground under the Act vesting jurisdiction in quo warranto proceedings in the Supreme Court of Puerto Rico to forfeit its charter and condemn its property under Act No. 47, even if Act No. 47 is a valid act.

The Supreme Court of Puerto Rico is a statutory court and its jurisdic-

tion is defined by statute. Unless a case comes strictly within the statute defining its jurisdiction, it can not proceed. It does not appear, therefore, that the Supreme Court of Puerto Rico has been given the power to declare a forfeiture of the property of a corporation and impose heavy fines thereon for an ultra vires act in violation of its articles of incorporation, or of a federal law.

Again, the record discloses that the government of Puerto Rico has looked on and has seen this corporation acquire and use 12,188 acres of agricultural land over a period of ten years or more in violation of these Acts, and has assessed and received taxes thereon without raising any question as to the validity of such holdings.

A statute, it is true, is not rendered ineffective by non-use. Chicago, B. & Q. R. Co. v. Iowa, 94 U.S. 155, 162, 24 L.Ed. 94. A failure to enforce a law does not necessarily repeal it. Louisville & N. R. Co. v. United States, 282 U.S. 740, 759, 51 S.Ct. 297, 75 L.Ed. 672. While it may be urged that the insular government may not be prevented from invoking the statutes in a proper case prohibiting the limitation of holdings of agricultural land in excess of 500 acres, we think it should not be permitted to forfeit land for past violations which it has winked at and condoned; and if it confiscates them it must do so under the rules of eminent domain in accordance with the provisions of the second paragraph of Sec. 6 of Act No. 47, Laws of 1935 (Special Session), supra, hereinbefore referred to.

Since Act No. 47 is claimed by the defendant to be a void act because it attempted to amend a federal statute by adding penalties thereto, see Auk Bay Salmon Canning Co. v. United States, 9 Cir., 300 F. 907; Puerto Rico v. Torres, supra, or is void because of this attempted change of a local civil act into a penal federal statute, and the entire Act is therefore rendered void, the issue is whether a valid complaint can be based thereon for a violation of a part of the Act which it now claims to be valid, if taken by itself, no reservation being made that if any part of the Act is invalid it shall not affect the remainder of the Act. The real issue in this case, therefore, is not whether a valid complaint could have been made under Act No. 47 but whether one was made, assuming Act No. 47 can be held to be a valid act. It is not whether the Act itself, by the rules for the construction of statutes, can be maintained as a valid act of the Puerto Rican legislature, but whether the complaint in this case sets forth valid grounds for dissolving this corporation through quo warranto proceedings authorized under Act No. 47 and the forfeiture of its property and the imposing of heavy fines. No specific charge is made in the complaint of a violation of a Puerto Rican statute, either of Act No. 30 of 1911, or any other local Act. We think, if such was the purpose of the pleader, the allegation is too indefinite to constitute a good charge in a proceeding on which to base a judgment of a forfeiture of valuable property and to impose heavy fines.

The only other allegation in the complaint is that the public policy of the government of Puerto Rico has been violated, which is not properly charged.

We do not hold that the People of Puerto Rico has no redress as against the holding of so much agricultural land as contrary to valid statutes of Puerto Rico in the event it proceeds according to law, or through the federal government proceeding for a violation of its laws. We think on the record in this case the judgment of the insular Supreme Court in these proceedings must be reversed.

The judgment of the Supreme Court of Puerto Rico is reversed with costs, but without prejudice to future proceedings under valid statutes, or in the federal courts based on a violation of Sec. 39 of the Organic Act, or Sec. 752, Title 48, U.S.C., 48 U.S.C.A. § 752.

PETERS, District Judge (dissenting).

I am unable to concur in the conclusion arrived at by the majority of this court that the Supreme Court of Puerto Rico had no statutory jurisdiction to support the judgment in this proceeding. I do not question the principles of law enunciated in the above opinion, but feel that a somewhat less technical application of them would properly result in sustaining the action of the local court in a field peculiarly its own.

Act No. 47 of the Puerto Rico legislature, approved August 7, 1935, is the particular statute relied upon and referred to by the supreme court, in its order granting leave to file the complaint in the nature of a quo warranto, as the basis of its jurisdiction. As I understand the above

opinion, Act No. 47 is held to contain the poison of invalidity in that it is supposed to amend a federal statute by providing a penalty for its violation where none existed before. The court considers that Act No. 47 covers matters of legislation within the exclusive jurisdiction of Congress and purports to vest in the insular court jurisdiction reserved exclusively to the courts of the United States.

If Act No. 47 contained nothing but a penalty for a violation of a federal statute, it would be clearly invalid for the reasons and on the authorities stated in the above opinion. Act No. 33 seems to be quite vulnerable in that respect; but Act No. 47 is differently worded and has a different background. It amended the local Act of March 1, 1902, relating to corporations in Puerto Rico and was passed a short time after the approval of Act No. 33 with no reference to it. It is as consistent with the statutory and factual situation, existing at the time of its passage, to hold that the lawmaking body, in the Act of August 7, was legislating wholly in the local field as to consider that it wilfully trespassed upon the federal enclosure. The language of the Act taken altogether supports this view:

"* * * whenever any corporation * * * exercises rights, performs acts or makes contracts in violation of the express provisions of the Organic Act of Puerto Rico or of any of its statutes * * *", the people could obtain a remedy through quo warranto, etc.

The Organic Act referred to did not directly prohibit corporations from doing anything. It was directed solely to the legislature, and only by the action of that body, following the mandate found in the federal law, were corporations affected. The applicable language of the Organic Act is:

"Every corporation hereafter authorized to engage in agriculture shall by its charter be restricted to the ownership and control of not to exceed five hundred acres of land." 48 U.S.C.A. § 752.

The defendant corporation, accordingly, was by its charter expressly restricted to ownership of five hundred acres. Not only that, but a local statute similarly restricted it and also provided that a corporation should only exercise powers conferred by its charter or articles of association (Act No. 30, approved March 9, 1911).

If the language in Act No. 47, referring to the Organic Act, is to be taken literally and also separated from its context, it would mean that, if a *corporation* violated the injunction laid upon the *legislature* by the Organic Act, the *corporation* would be subject to punishment. But a corporation cannot violate a mandate laid only upon the legislature. It can only violate a prohibition laid upon it by the legislature in accordance with the mandate the legislature has received from Congress; and then the violation would be of a local law effective in a field wholly open to the local legislature. This is the only field presumably intended to be occupied by the local legislature in passing the statute.

It seems to me that in construing the Act words should be supplied to make all the language effective and its meaning both clear and consistent with previous legislation, both federal and local, as follows:

"Whenever any corporation * * * exercises rights, performs acts or makes contracts in violation of [restrictions imposed upon it by the legislature as required by] the express provisions of the Organic Act of Puerto Rico or any of its statutes", the Attorney General may file, etc.

But in any event, it seems to be clear that Act No. 47 contains language, outside of any reference to the Organic Act, and separable from it, being the words "or any of its statutes", etc., which give the supreme court jurisdiction in case of violation of local laws,—and it is only local laws that were violated by the defendant, i. e., the provisions in Act No. 30 of March 9, 1911, prohibiting corporations from holding more land than the original resolution of Congress provided for, and forbidding corporations from exercising corporate powers beyond the limits of their articles of association (Secs. 3 and 4).

This provision could stand as a separate Act by itself.

"The unconstitutionality of a part of an act does not necessarily defeat or affect the validity of its remaining provisions." Champlin Refining Co. v. Corp. Comm. of Okla. et al., 286 U.S. 210, 234, 52 S.Ct. 559, 565, 76 L.Ed. 1062, 86 A.L.R. 403; Texoma Natural Gas Co. v. R. R. Comn., D.C., 59 F.2d 750; El Paso & N. E. R. Co. v. Gutierrez, 215 U.S. 87, 30 S.Ct. 21, 54 L. Ed. 106.

It seems to be recognized that Act No. 47 confers jurisdiction on the Puerto Rico Supreme Court in quo warranto, at least,

764

for violation of local law. It cannot be questioned that there was a violation of local law, both in respect of holding more than the permitted number of acres of land and in exercising powers not given by the articles of incorporation.

It is thought, however, that the allegations in the complaint do not describe violations of local law with sufficient definiteness to warrant a judgment against the defendant corporation.

It seems to me, however, in view of the fact that the field of possible violations by the land-holding agricultural corporations is confined to local laws, and that the allegations in the complaint, when put together, state facts and describe a situation which show a violation of such laws, that the judgment of the supreme court should not be reversed on what amounts to a question of pleading, where the issues are clear enough, in a proceeding which, after all, does not differ essentially from any other suit aimed to settle a dispute between the parties.