**Beulah J. BLACKBURN, Plaintiff,**

v.

**Lawrence F. O'BRIEN, Postmaster General of the United States of America, John W. Macy, Jr., Chairman, United States Civil Service Commission, L. J. Andolsek, Vice Chairman, United States Civil Service Commission; and Robert E. Hampton, Commissioner, United States Civil Service Commission, Defendants.**

**Civ. A. No. 67–C–29–H.**

United States District Court
W. D. Virginia,
Harrisonburg Division.
June 19, 1968.

John A. Paul, Harrisonburg, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

This is an action against the Postmaster General and the individual members of the Civil Service Commission. It involves the right of the plaintiff, Mrs. Beulah J. Blackburn, to a third class postmastership in Port Republic, Virginia. Jurisdiction is predicated upon 28 U.S.C. § 1331, the action "arising under" the Veterans Preference Act of 1914, as amended, 5 U.S.C. § 2108 et seq. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendants have moved for summary judgment in their favor. For the reasons set forth below this motion will be granted.

I

The facts are not disputed. On April 23, 1966 the Civil Service Commission (hereinafter referred to as the Commission) held an examination for the office of postmaster of Port Republic, Virginia. The plaintiff took the examination and included in her application a claim for a veteran preference based upon her husband's service-connected disability. Her claim was supported by information from the files of the Veterans Administration showing that her husband's service-connected disability was rated as fifty per cent disabling. Under date of June 27, 1966 the Commission's Medical Director informed the plaintiff that her claim for veteran preference benefits had been denied.

On December 1, 1966 the Commission forwarded to the Post Office Department a "certificate of eligibles" setting forth the names of three applicants eligible for the Port Republic postmastership. The plaintiff's name appeared in

the number two position with a rating of 82. The certificate contained no preference eligibles.

On March 31, 1967 the Post Office Department issued a memorandum to the Commission indicating the selection of Mrs. Margie H. Alexander for appointment to the position of postmaster at the Port Republic office. On May 4, 1967 the President of the United States forwarded the nomination of Mrs. Alexander to the Senate for confirmation.

On May 5, 1967 the plaintiff wrote to the Commission requesting a review of its determination that she was not entitled to a veteran preference. Under date of May 15, 1967 the Medical Director for the Commission advised the plaintiff as follows:

> The only evidence acceptable in determining whether or not a veteran's disability of service origin would disqualify him for certain civil service positions is information submitted from the official files of the Veterans Administration or the appropriate service department.

> You furnished information on Standard Form 15, Veteran Preference Claim, that your husband is employed full-time as a mechanic. Information from the official files of the Veterans Administration shows that his service-connected disability is rated as 50% disabling.

> Our medical staff has determined that Mr. Blackburn's service-connected disability in itself will not disqualify him for positions in the Federal service along the lines of his usual occupation. Accordingly your claim to wife preference is denied.

Under date of June 19, 1967 the Commission's Board of Appeals and Review advised the plaintiff that in light of notification from the Veterans Administration that Mr. Blackburn's service-connected disability had since been raised from fifty per cent to seventy per cent, the prior decision of the Commission's Medical Director had been reversed and the plaintiff granted a ten-point preference as of June 5, 1967. The Commission then informed the Post Office Department that the plaintiff, having been awarded the preference, was entitled to stand in the number one position on the certificate of eligibles. This notice, however, also stated that, in view of the selection of Mrs. Alexander from the certificate previously issued, an amended certificate showing the plaintiff's change in rating and relative standing would not be issued unless requested by the Post Office Department and unless that Department specifically advised the Commission that Mrs. Alexander's selection had been revoked.

The plaintiff sought review of this determination with the Commission's Board of Appeals and Review and requested that the certificate be recalled and amended. This request was referred to the Chief of the Commission's Postal Examining Division who, in a letter to plaintiff dated July 24, 1967, declined to recall the certificate and cited an opinion of the Attorney General (40 Op.Atty.Gen. 556) supporting the Commission's established policy of recalling a certificate of eligibles for the purpose of adding the name of a veteran who did not establish his preference until after the certificate was issued only if no selection were reported by the Postmaster General or if a selection previously made were revoked. Under date of August 1, 1967 the Commission's Board of Appeals and Review advised the plaintiff that this correctly stated its position with regard to the plaintiff's request that the certificate be recalled.

The Post Office Department did not revoke the selection of Mrs. Alexander for appointment, and on July 21, 1967 the Senate confirmed her nomination to the office in question. On August 28, 1967 Mrs. Alexander was installed by the Post Office Department in that office.

## II

The plaintiff alleges that her rights under the Veteran's Preference Act have been violated in that

(1) The Commission "did not place her name at the top of the list of eligibles and did not accord her the veteran's preference. The plaintiff appealed the decision of the Civil Service Commission in refusing to grant the * * * preference and the * * * Commission on June 27, 1967 accorded the plaintiff the veteran's preference but thereafter refused to revise the list of eligibles in accord with this determination."

(2) The Postmaster General "after being informed on or about June 22, 1967, that the * * * Commission had accorded plaintiff her duly merited preference * * * failed to rectify his * * * erroneous and wrongful course of action", presumably by not demanding the withdrawal of the President's nomination of Mrs. Alexander from the Senate where it was being considered for confirmation at that time.

By way of relief the plaintiff originally demanded (1) a declaratory judgment that the plaintiff, being entitled to a ten-point preference, be placed in the number one position on the certificate of eligibles and (2) a temporary restraining order, a preliminary injunction and a permanent injunction enjoining the Postmaster General from installing in the office in question any person other than the plaintiff. Upon the assurance of the court that the plaintiff's rights would not be waived thereby, no injunctive relief was granted and Mrs. Alexander was installed in office.[1] This action therefore must now be considered as one which seeks, in addition to declaratory relief, the removal of the present incumbent from the office in question and the installation of the plaintiff therein.

III

Regardless of whether the plaintiff seeks injunctive relief or removal of the present incumbent from the office in which she is presently installed, the present proceeding is essentially one to determine the rights of both the claimant and the appointee to the postmastership in question. Such a proceeding sounds in *quo warranto*,[2] the classic remedy by which to try the title to a public office. See Wallace v. Anderson, 5 Wheat. 291, 5 L.Ed. 91 (1820); Territory v. Lockwood, 3 Wall. 236, 18 L.Ed. 47 (1865); Newman v. United States ex rel. Frizzell, 238 U.S. 537, 35 S.Ct. 881, 59 L.Ed. 1446 (1915); United States v. Smith, 286 U.S. 6, 52 S.Ct. 475, 76 L.Ed. 954 (1931). As stated in United States v. Malmin, 272 F. 785, 790 (3rd Cir. 1921), "The appropriate process [for testing title to public office] is *quo warranto*."

Because *quo warranto* is "the prerogative writ by which the Government can call upon any person to show by what warrant he holds a public office or exercises a public franchise", Newman v. United States ex rel. Frizzell, supra, 238 U.S. at 545, 546, 35 S.Ct. at 883, a private individual has no standing to institute such a proceeding. As said in the *Lockwood* case, supra, 3 Wall. at 240, 18 L.Ed. 47, "The right to institute such proceedings is inherently in the Government of the nation." And as Chief Justice Marshall held in Wallace v. Anderson, supra, 5 Wheat. at 292, 5 L.Ed. 91, an information in the nature of *quo warranto* cannot be maintained "except at the instance of the government * · * *." Thus the instant proceedings

---

1. The Administrative Procedure Act, 5 U.S.C. § 706, provides as follows:
   The reviewing court shall— * * *
   (1) compel agency action unlawfully withheld or unreasonably delayed; and
   (2) hold unlawful and set aside agency action * * * found to be—
     (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law * * *
     (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
     (D) without observance of procedure required by law * * *

2. "The writ of *Quo Warranto* was a common law writ. In the course of time it was superseded by the speedier remedy of an Information in the same nature." Territory v. Lockwood, supra, 3 Wall. at 238, 18 L.Ed. 47.

could have only been brought in the name of the United States and by its representative, "for there is no statute delegating to an individual the right to resort to it [*quo warranto*]".[3] Johnson v. Manhattan Railway Company, 289 U. S. 479, 502, 53 S.Ct. 721, 729, 77 L.Ed. 1331 (1933). Moreover, a *quo warranto* proceeding, to reach its objective in a situation such as that before the court, must be brought against the person who is charged with exercising the office in question without lawful right. Id.

### IV

Assuming *arguendo*, however, that the plaintiff has standing to institute the present proceeding and that the proper parties are before the court, the defendants' motion for summary judgment should still be granted. The plaintiff's rights under the Veteran's Preference Act were violated only if the appointing authority failed to follow the procedures specified by the statute and the pertinent regulations. Elder v. Brannan, 341 U.S. 277, 289, 71 S.Ct. 685, 95 L.Ed. 939 (1951). The complaint contains no such allegation, and it is therefore fatally defective. Id.

In an effort to inject the necessary element of procedural irregularity into her case the plaintiff argues in her brief that the appointing authorities failed to file written reasons with the Commission for passing over a preference eligible and selecting a non-preference eligible as required by § 3318 of the Act. The short answer to this argument is that at the time the office of the Postmaster General made its selection from the certificate of eligibles the plaintiff had not yet established her preference and therefore was not a "preference eligible" within the meaning

of § 3318. The record clearly reveals that the defendants' selection of Mrs. Alexander for the appointment in question was in strict compliance with the Act, the applicable regulations and the established policy of the Commission.

The whole thesis of this action is that it was "inequitable" for the plaintiff to be denied appointment to the Port Republic postmastership. Whatever inequities the plaintiff may feel she has suffered at the hands of the Executive Department are not in law a sufficient basis for granting the relief requested.

### V

For the reasons stated above, it is adjudged and ordered that the defendants' motion for summary judgment must be and hereby is granted and the case dismissed.

3. In 1901 Congress specifically authorized the United States District Courts for the District of Columbia to issue *quo warranto* in the name of the United States in proceedings instituted by "interested persons" where the Attorney General of the United States or the Attorney for the District of Columbia had refused to institute proceedings in the name of the Government itself. "However, this grant is strictly limited and is confined solely to situations involving franchises and public offices held within the District of Columbia." United States ex rel. State of Wisconsin v. First Federal Savings and Loan Association, 248 F.2d 804 (7th Cir. 1957) cert. denied 355 U.S. 957, 78 S.Ct. 543, 2 L.Ed.2d 533 (1958).